**In re Fergus GINTHER, Debtor.**

**Fergus M. GINTHER, et al.,
Plaintiffs-Appellants,**

v.

**Daniel E. O'CONNELL, et al.,
Defendants-Appellees.**

**Nos. 85–2415, 85–2694.**

United States Court of Appeals,
Fifth Circuit.

June 10, 1986.

M.H. Ceronsky, Robert J. Vander Lyn and Yocel Alonso, Bellaire, Tex., for plaintiffs-appellants.

Lionel Schooler and Ronald J. Sommers, Lackshin & Nathan, Houston, Tex., for O'Connell.

Michael A. Pohl, Rafael (Ray) Berk and John H. Bennett, Jr., Gilpin, Maynard, Parsons, Bennett & Pohl, Houston, Tex., for Ralph G. Ragland, et al.

Before REAVLEY, RANDALL and DAVIS, Circuit Judges.

RANDALL, Circuit Judge:

This consolidated appeal arises out of a district court order approving a settlement agreement in a bankruptcy proceeding. The district court in May 1985 denied a motion under Fed.R.Civ.P. 60(b)(3) to set aside this order. The district court assessed attorney's fees against the debtor, Fergus M. Ginther, and his attorney, M.H. Cersonsky. We affirm, and impose further sanctions.

I.

In September 1981, several creditors commenced involuntary Chapter 7 proceedings against Fergus M. Ginther ("Ginther") and a number of his business entities. After commencement of involuntary bankruptcy proceedings, but before entry of the order for relief, Ginther filed suit in state district court against a creditor, Ralph G. Ragland ("Ragland"), and others seeking to reinstate his interest in an office building that had been foreclosed as a consequence of default. Ragland counterclaimed for several million dollars seeking to recover partnership funds allegedly embezzled by Ginther and damages caused by allegedly defective building construction.

In September 1982, an order for relief was entered and Daniel E. O'Connell (the "Trustee") was appointed Trustee for the estate of Ginther. Subsequently, reference of the case was withdrawn, at least in part, from the bankruptcy court by the United States District Court. In May 1983, settlement discussions between Ragland and the Trustee began. In July 1983, Ragland and the Trustee reached an agreement to settle their controversies, including the amount of damages to be awarded Ragland on his counterclaim. On September 16, 1983, the Trustee applied for approval of the Ragland-Trustee compromise.

On January 6, 1984, the district court conducted a hearing on the Ragland-Trustee compromise. Joel Kay, a member of the law firm of Sheinfeld, Maley & Kay, gave unrebutted testimony that, in his opinion, the settlement would be in the best interest of the creditors and estate of Ginther. Although afforded an opportunity to do so, Ginther did not file a formal objection to the Application to approve the Ragland-Trustee Compromise. The district court nevertheless permitted Ginther and his then counsel—M.H. Cersonsky ("Cersonsky") had not yet been retained to represent Ginther—to participate in the hearing. Ginther at that time possessed an affidavit of a former employee which later led him to make his 60(b)(3) motion.

At the conclusion of the hearing on January 6, 1984, the district court signed an order approving the Ragland-Trustee compromise. Ginther gave timely notice of appeal from that order, but his appeal was dismissed by this court for want of prosecution. In reliance upon the order of the district court, Ragland agreed to limit judgment on the state court counterclaim to $400,000.

On January 7, 1985, Ginther commenced the instant proceeding, filing a motion under Fed.R.Civ.P. 60(b)(3) challenging the January 6, 1984, order approving the Ragland-Trustee compromise. The 60(b) motion included copies of correspondence that Ginther's new counsel, Cersonsky, had taken from the offices of counsel for the Trustee. Read generously, Ginther's 60(b)(3) motion claimed that the January 6, 1984, order should be set aside because it was somehow obtained by the Trustee's use of allegedly perjured testimony which had been paid for out of funds provided by the Ragland-Trustee compromise.

In May 1985, the district court conducted several hearings pertaining to the 60(b) motion. At the conclusion of the hearings on May 10, the court ruled from the bench that Ginther, an insolvent debtor in bankruptcy proceedings, lacked standing to challenge the order approving the compromise agreement between the Trustee and Ragland. Even assuming Ginther had such standing, the 60(b) motion would be denied on the merits. The court also ordered the return of the documents that had been taken from the files of counsel for the Trustee, and placed the copies filed with the court under seal pending conclusion of this appeal. On May 17, the district court made written findings of fact and conclusions of law. After a hearing in September 1985, the district court assessed sanctions against Ginther under Rule 11, and against his attorney, Cersonsky, under Rule 11 and 28 U.S.C. § 1927. Ginther now appeals the district court's denial of the 60(b) motion, and both Ginther and Cersonsky appeal the sanctions assessed against them.

## II.

On review, we must determine whether the district court abused its discretion in denying Ginther's motion under Fed. R.Civ.P. 60(b)(3) to set aside the January 6, 1984, order approving the Ragland-Trustee compromise.[1] The district court's factual findings are to be sustained unless clearly erroneous. *Wilson v. Thompson,* 638 F.2d 801, 804 (5th Cir.1981). Ginther has failed to sustain his burden under 60(b)(3) that he prove by "clear and convincing evidence" that the January 6 order was obtained through fraud, preventing him from "fully and fairly presenting his claim or defense." *Rozier v. Ford Motor Co.,* 573 F.2d 1332, 1339 (5th Cir.1978). Ginther's main allegation, that the compromise provided funds which were used to procure an allegedly perjured affidavit, does not pertain to the relevant 60(b)(3) inquiry: that is, whether the allegedly perjured affidavit was used to

---

1. In relevant part, Rule 60(b)(3) provides:
   (b) MISTAKES; INADVERTENCE; EXCUSABLE NEGLECT; NEWLY DISCOVERED EVIDENCE; FRAUD, ETC. On motions and upon such terms as are just, the court may relieve a party or his legal representative from

a final judgment, order, or proceeding for the following reasons: ... (3) Fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party.

obtain the January 6 order, preventing Ginther from fully and fairly presenting his case. Our own review of the record supports the district court's finding that Ginther's 60(b)(3) motion was frivolous: the Trustee did not in fact use the affidavit at the January 6 hearing; the district court was familiar with the affidavit prior to the January 6 hearing and disregarded it as unbelievable; and most important, the affidavit had nothing whatsoever to do with the Ragland-Trustee compromise and was, in fact, executed *after* the compromise had been negotiated.

Ginther's allegation of fraud upon the court under the Savings Clause of 60(b) is similarly without merit. The Savings Clause provides that: "[t]his rule does not limit the power of a court to entertain an independent action to ... set aside a judgment for fraud upon the court." " 'Generally speaking, only the most egregious misconduct ... will constitute a fraud upon the court.' " *Rozier*, 573 F.2d at 1338 (quoting *United States v. International Telephone & Telegraph Corp.*, 349 F.Supp. 22, 29 (D.Conn.1972), *aff'd without opinion*, 410 U.S. 919, 93 S.Ct. 1363, 35 L.Ed.2d 582 (1973)). It is necessary to show "an unconscionable plan or scheme" designed to influence improperly the court in its

decision. *Rozier*, 573 F.2d at 1338. As can be seen from the above discussion, the Trustee did not construct any "plan or scheme" to influence the court in its January 6 order. The allegedly improper affidavit was not used by the Trustee or the court and was not relevant to the settlement order. As the district court noted: "no fraud was perpetrated on this court. The court has been well aware of the problems with [the affiant] ... since they arose." Record Vol. 4 at 26.[2]

## III.

The district court determined that the Rule 60(b)(3) motion was frivolous, brought in bad faith, and prosecuted in violation of Fed.R.Civ.P. 11 and 28 U.S.C. § 1927. The court therefore awarded attorney's fees of $52,000 plus interest—$26,000 each to counsel for the Trustee and counsel for Ragland—payable one-half by Ginther and one-half by Ginther's counsel, Cersonsky. Ginther and Cersonsky now argue—in a brief which mostly parrots their frivolous claim on the merits—that the district court abused its discretion in finding that the 60(b) motion was prosecuted in violation of Rule 11 and § 1927. We find no abuse of discretion.

2. Ginther additionally complains that the district court's entry of a protective order was an abuse of discretion. This claim is entirely frivolous. The district court found that counsel for the Trustee and Cersonsky had entered into an agreement under which Cersonsky was given access to files in order to assist the Trustee. Although Ginther now disputes that such an agreement was made, to the district court Cersonsky admitted: "I fully intended to cooperate with them." Record Vol. 4 at 24. Despite the agreement and the unwaived work-product privilege, Ginther incorporated privileged documents into pleadings filed as part of a public record, and disseminated copies to other counsel occupying an adverse position to the Trustee. Record Vol. 4 at 46–50. The district court was astonished at this action, observing that "we certainly have a very serious question of contempt of this court." *Id.* at 48. The district court accordingly granted the Trustee's motion for a protective order, compelling the return of the privileged documents.

We see no abuse of discretion on these facts. Ginther now ventures an unfounded claim, re-

plete with citations to irrelevant case law, that the district court's action somehow constituted a "prior restraint" in violation of the first amendment. As the district court did not enter its protective order until *after* Ginther had disseminated the privileged material, we would not categorize the order as a prior restraint. In addition, as noted by the Supreme Court, the "unique character of the discovery process requires that the trial court have substantial latitude to fashion protective orders." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36, 104 S.Ct. 2199, 2209, 81 L.Ed.2d 17 (1984). Ginther's claim that he is prevented from presenting us on appeal with the privileged information is worse than disingenuous, for the district court clearly informed Ginther at the May 10, 1985, hearing that the materials would be sealed and sent to the Court of Appeals and that Ginther would have access to the materials for the purposes of the appeal. Record Vol. 4 at 41. Finally, Ginther's claim that he was denied the opportunity to give testimony is not supported by the record.

Before 1983, Rule 11 required merely a subjective, good faith belief that there were good grounds to support a pleading. *Davis v. Veslan Enterprises*, 765 F.2d 494, 497 n. 4 (5th Cir.1985). Cersonsky maintained before the district court that his subjective good faith belief remained the relevant standard. Record Vol. 2 at 25. However, the 1983 amendments to the rule added a requirement that the movant's belief be one "formed after reasonable inquiry" that the motion is both "well grounded in fact" and "warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law."[3] Cersonsky and Ginther now on appeal devote only one paragraph in their reply brief to demonstrate that Cersonsky made the requisite reasonable inquiry into the facts and law before filing the Rule 60(b)(3) motion.

Frankly, we are surprised that Cersonsky and Ginther were able even to fill one paragraph with protestations that a reasonable inquiry was made. Cersonsky confessed that prior to the time he filed the Rule 60(b)(3) motion on behalf of Ginther, he had not reviewed the transcript of the compromise hearing. Record Vol. 2 at 72. Cersonsky had not discussed the compromise with the attorney who represented Ginther at the compromise hearing. *Id.* at 84–86. Nor did Cersonsky make any effort to contact either counsel for the Trustee or counsel for Ragland regarding the affidavit about which Ginther complained, or contact the expert witness who had testified on behalf of the compromise. *Id.* at 73, 77, 108, 114.

In September 1985, Cersonsky revealed that he had only "learned today" that the Ragland-Trustee compromise was agreed to in the summer of 1983—well before the allegedly perjured affidavit was executed. Record Vol. 2 at 84. To this day Cersonsky claims not to know whether Ginther objected to the Ragland-Trustee compromise. We agree with the district court that this motion was brought in bad faith, as is demonstrated by Cersonsky's shocking admission to the district court that he did not know whether the Ragland-Trustee compromise was in the best interest of the estate and that he "quite possibly" would have filed the 60(b)(3) motion to set aside the compromise even if the original compromise had been very much in Ginther's favor. Record Vol. 2 at 114–15. Given the above, we find no abuse of discretion in the district court's assessment of attorney's fees against Ginther under Rule 11, and against Cersonsky under both Rule 11 and 28 U.S.C. § 1927, which provides for such an assessment against an attorney who unreasonably and vexatiously multiplies the proceedings in a case.

### IV.

Despite the application of sanctions below under Rule 11 and 28 U.S.C. § 1927, Ginther and Cersonsky have filed and presented the instant appeal. We will not allow Ginther and Cersonsky to use the courts to harass the Trustee and Ragland. Courts of Appeals may award damages, including attorney's fees and double costs, to an appellee when an appeal is frivolous. 28 U.S.C. § 1912; Fed.R.App.P. 38. *Hag-*

**3.** Rule 11 provides in relevant part:

Every pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record in his individual name, whose address shall be stated. A party who is not represented by an attorney shall sign his pleading, motion, or other paper and state his address.... The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other papers; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the exten-

sion, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.... If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper including a reasonable attorney's fee.

**1156**

erty v. Succession of Clement, 749 F.2d 217 (5th Cir.1984), cert. denied, — U.S. —, 106 S.Ct. 333, 88 L.Ed.2d 317 (1985). We assess double costs against Ginther for his persistence in using this clearly frivolous appeal as a tool for harassment and torment. We also remand this case to the district court so that it may calculate the additional amount of attorney's fees due the Trustee and Ragland from Ginther as a result of this frivolous appeal. At oral argument, Cersonsky demonstrated an almost unbelievable ignorance of the facts of this case. For example, as noted above, he maintained that he still did not know whether or not Ginther had objected to the Ragland-Trustee compromise. At best, we approach this statement with skepticism. To impose fees and costs against Ginther alone will not guarantee that his attorney will be directly affected or that he will be deterred from bringing similar frivolous appeals in the future. *Hagerty*, 749 F.2d at 223. Moreover, Ginther's ostensible insolvency may present a problem in collecting an award. Thus, to further the policy underlying the imposition of sanctions, and to aid the appellees in collecting their award, we assess part of the fees and costs arising from this appeal personally against Cersonsky under 28 U.S.C. § 1927.

For the above reasons, we assess double costs against Ginther and Cersonsky to be borne by each in equal proportion, and remand to the district court to determine the amount of additional attorney's fees due the Trustee and Ragland and to apportion the fees equally between Ginther and Cersonsky. The order of the district court is AFFIRMED.