**UNITED STATES of America, Plaintiff,**

v.

**$9,041,598.68 (NINE MILLION FORTY ONE THOUSAND, FIVE HUNDRED NINETY EIGHT DOLLARS AND SIXTY EIGHTS CENTS), Defendant.**

**Civil Action No. H–95–3182.**

United States District Court,
S.D. Texas,
Houston Division.

July 21, 1997.

William T. Hankinson, Jane Politz Brandt, Anna E. Marple, Thompson & Knight, Dallas, TX, Jeffrey K. Smith, Texaco Inc., New Orleans, LA, Michael Warren Perrin, King & Spaulding, Houston, TX, for Texaco, Inc.

Scott Charles Frist, Krist, Gunn, Weller, Neumann & Morrison, Houston, TX, Stanley Jack Krist, Michael Thoedore Trefny, Stanley J. Krist and Associates, Houston, TX, Joel Howard Muscat, Law Office of Joel Muscat, Stafford, TX, for Eastern Exploration, Inc.

Maxel B. 'Bud' Silverberg, Law Office of Maxel B. 'Bud' Silverberg, Dallas, TX, pro se.

Douglas Stewart Lang, Gardere & Wynne, Dallas, TX, for Julie Challenger, Inc.

## MEMORANDUM AND ORDER

ATLAS, District Judge.

This civil forfeiture action was tried to a jury in March, 1997. Currently pending before this Court is a motion filed by the Houston Chronicle Publishing Company ("Chronicle"), seeking access to what the Chronicle identifies as "the deposition of Marco Enrique Torres Garcia." *See* Houston Chronicle Publishing Company's Motion to Unseal Deposition [Doc. # 220].[1] The Chronicle is not a party to the civil forfeiture action. The Government strenuously opposes unsealing any deponent's depositions, particularly when the deponents did not testify at trial.

The Court has considered the Motion, the responses and replies, all other matters of record in this case, and the relevant authorities. For the reasons stated herein, the Chronicle's Motion is denied.

Robert J. Clary, Jamie King Harrison, Owens, Clary & Aiken, Dallas, TX, for Shore Exploration and Production Corp.

Jay Scott Carothers, Exxon Corp., Houston, TX, for Exxon Corp.

## FACTUAL BACKGROUND

In the weeks before trial, this Court entered protective orders for "good cause." This was authorized by Rule 26(c), among other legal bases.[2] *See* Fed.R.Civ.P. 26(c)

1. Also pending is the Chronicle's **Motion to Unseal Deposition** [Doc. # 217], by which the Chronicle seeks access to the deposition of Mario Ruiz Massieu. No responses to this motion have been filed. Since Massieu's deposition is not filed under seal, it is available for public review. Therefore, this motion will be denied as moot.

2. Rule 26(c) was not invoked explicitly by the parties in written submissions. It is nevertheless applicable.

(district court may order that discovery be conducted with no one present except persons designated by the court, and that a deposition may be sealed and opened only upon order of the Court). In particular, the Government's sealed filings demonstrated weighty concerns, including safety of the confidential informants and the progress of an ongoing criminal investigation. The Court therefore ordered that the depositions of several confidential informants be conducted under specified conditions, and that their transcripts be filed under seal. The identities of the deponents, as well as their statements in the depositions, were protected.[3]

In the instant motion, the Chronicle argues that the reason for sealing the deposition "may no longer outweigh the right of access" to the deposition, which arises under the common law and the First Amendment to the United States Constitution.[4]  Motion, at 1.

### DISCUSSION

### I.

The first question before this Court is whether a First Amendment right of access attaches to materials under the Court's protective order. In *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 32, 104 S.Ct. 2199, 2207, 81 L.Ed.2d 17 (1984), the Supreme Court held that Rule 26(c) of the Federal Rules of Civil Procedure, which authorizes the district courts to impose protective orders, balances the broad scope of pretrial discovery and therefore "furthers a substantial governmen-

tal interest unrelated to the suppression of expression." *Id.* at 34, 104 S.Ct. at 2208.[5] The Court further held that the broad discretion conferred upon the trial court by Rule 26(c) is necessary, since "[t]he unique character of the discovery process requires that the trial court have substantial latitude to fashion protective orders." *Id.* at 36, 104 S.Ct. at 2209. Since the processes of discovery under the Federal Rules of Civil Procedure are matters of "legislative grace," the Court stated, "continued court control over the discovered information does not raise the same specter of government censorship that such control might suggest in other situations." *Id.* at 32, 104 S.Ct. at 2207.

The *Seattle Times* Court concluded that valid orders pursuant to Rule 26(c) sufficiently protect the press's interests and do not violate the First Amendment:

> We therefore hold that where, as in this case, a protective order is entered on a showing of good cause as required by Rule 26(c), is limited to the context of pretrial civil discovery, and does not restrict the dissemination of the information if gained from other sources, it does not offend the First Amendment.

*Seattle Times*, 467 U.S. at 37, 104 S.Ct. at 2209–10. Under the decision in *Seattle Times*, "heightened scrutiny" under the First Amendment does not apply to discovery protective orders. *See In re Alexander Grant & Co. Litigation*, 820 F.2d 352, 355 (11th Cir.

---

3. The Chronicle therefore did not learn the name "Marco Enrique Torres Garcia" from any court record, but apparently from its own investigation and/or supposition.

4. The Chronicle has standing to challenge the protective order. *Grove Fresh Distributors, Inc. v. Everfresh Juice Co.*, 24 F.3d 893, 898 (7th Cir.1994); *United States v. Valenti*, 987 F.2d 708, 711 (11th Cir.1993); *United States v. Gurney*, 558 F.2d 1202, 1206 (5th Cir.1977).

5. The Court stated as follows:
   Liberal discovery is provided for the sole purpose of assisting in the preparation and trial, or the settlement, of litigated disputes. Because of the liberality of pretrial discovery permitted by Rule 26(b)(1), it is necessary for the trial court to have the authority to issue protective orders conferred by Rule 26(c). It is clear from experience that pretrial discovery by de-

positions and interrogatories has a significant potential for abuse . . .
   There is an opportunity, therefore, for litigants to obtain—incidentally or purposefully—information that not only is irrelevant but if publicly released could be damaging to reputation and privacy. The government clearly has a substantial interest in preventing this sort of abuse of its processes. The prevention of the abuse that can attend the coerced production of information under a State's discovery rule is sufficient justification for the authorization of protective orders.
   *Seattle Times*, 467 U.S. at 34–36, 104 S.Ct. at 2208–09 (footnotes and internal citations omitted). The *Seattle Times* Court actually was discussing Rule 26(c) of Washington's civil procedure rules, which was modeled on the Federal Rules of Civil Procedure. *See Seattle Times*, 467 U.S. at 26 n. 7, 29, 104 S.Ct. at 2404 n. 7, 2205–06.

1987); *Anderson v. Cryovac, Inc.*, 805 F.2d 1, 6–7 (1st Cir.1986); *Cipollone v. Liggett Group*, 785 F.2d 1108, 1118–19 (3d Cir.1986); *Tavoulareas v. Washington Post Co.*, 737 F.2d 1170 (D.C.Cir.1984); *Word of Faith World Outreach Center Church Inc. v. Morales*, 143 F.R.D. 109, 112–13 (W.D.Tex.1992).[6] *See also In re Ginther*, 791 F.2d 1151, 1154 n. 2 (5th Cir.1986). The Court therefore holds that First Amendment scrutiny is not properly applied to the Chronicle's request for access to the sealed depositions.

This Court finds in its discretion, as it did previously, that sufficient "good cause" exists to justify continued protection of the depositions at issue when the deponent did not testify at the forfeiture trial. *See* Fed. R.Civ.P. 26(c) (court may "make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense"); *Landry v. Air Line Pilots Association*, 901 F.2d 404, 435 (5th Cir.1990); *Harris v. Amoco Production Co.*, 768 F.2d 669, 684 (5th Cir.1985); *Bucher v. Richardson Hosp. Authority*, 160 F.R.D. 88, 92 (N.D.Tex.1994). In particular, sealed documents presented to the Court demonstrate that the Government has continuing and weighty interests in the safety of its confidential informants and the progress of its ongoing criminal investigation, and that release to the Chronicle of a deposition by a person who did not testify at trial would likely undermine those interests significantly.[7]

## II.

■ Alternatively, even if the Court were to apply the First Amendment standards set out in *Press–Enterprise Co. v. Superior Court of California*, 478 U.S. 1, 106 S.Ct.

2735, 92 L.Ed.2d 1 (1986), as advocated by the Chronicle, the Chronicle would not be entitled to access to the confidential informant's deposition.

In the context of criminal pretrial proceedings, the Supreme Court held in *Press–Enterprise* that there are two considerations for determining whether a First Amendment right of access attaches to a particular proceeding. First, the court is to consider whether the place and process in question historically have been open to the press and general public. Second, the court is to consider whether public access plays a significant positive role in the functioning of the particular process in question. *Press–Enterprise*, 478 U.S. at 8–9, 106 S.Ct. at 2740–41.

Many courts have held that the public enjoys a First Amendment right to attend civil as well as criminal proceedings, and therefore have applied similar factors to civil proceedings. *See In re Grand Jury Subpoena*, 103 F.3d 234, 241 & n. 9 (2d Cir.1996) (applying *Press–Enterprise* factors to a civil proceeding, specifically, a motion to compel disclosure by the government of its electronic surveillance); *Grove Fresh*, 24 F.3d at 897; *Anderson*, 805 F.2d at 11 (declining to resolve the question but citing multiple cases); *Doe v. Santa Fe Independent School Dist.*, 933 F.Supp. 647, 650 (S.D.Tex.1996) (citing *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059 (3d Cir.1984); *Doe v. Stegall*, 653 F.2d 180 (5th Cir. Unit A 1981)).

Under the *Press–Enterprise* standard, the requested unsealing of the deposition transcripts would not be warranted. First, a deposition is not a proceeding that historically has been open to the public. The Supreme Court has stated that "pretrial depositions and interrogatories are *not* public

---

**6.** The Third Circuit in *Cipollone* granted mandamus because the district court had misconstrued *Seattle Times* and inappropriately applied the First Amendment's least restrictive means test when considering a protective order. The *Cipollone* Court stated that the *Seattle Times* holding "leaves no room for lower courts to consider first amendment factors in fashioning or reviewing Rule 26(c) orders." *See Cipollone*, 785 F.2d at 1118–20. The First Circuit in *Anderson*, 805 F.2d at 6, specifically disagreed with the Third Circuit's interpretation of *Cipollone*, taking the position that "first amendment considerations

cannot be ignored in reviewing discovery protective orders," but that "first amendment scrutiny ... must be made within the framework of Rule 26(c)'s requirement of good cause." *Anderson*, 805 F.2d at 7.

**7.** Moreover, the Supreme Court has held that a court may exercise its discretion to manage civil litigation so as to avoid interference with a criminal case. *Degen v. United States*, —— U.S. ——, ——, 116 S.Ct. 1777, 1782, 135 L.Ed.2d 102 (1996).

components of a civil trial," as they were not open to the public at common law and, as a matter of modern practice, generally are conducted in private. *Seattle Times,* 467 U.S. at 33, 104 S.Ct. at 2207–08 (emphasis added); *see Anderson,* 805 F.2d at 12 ("discovery proceedings are fundamentally different from proceedings to which the courts have recognized a public right of access"). Because information gathered during pretrial discovery "may be unrelated, or only tangentially related" to the underlying cause of action, restraints on discovered but not yet admitted information "are not a restriction on a traditionally public source of information." *Seattle Times,* 467 U.S. at 33, 104 S.Ct. at 2208. *See American Civil Liberties Union of Mississippi, Inc. v. State of Miss.,* 911 F.2d 1066, 1072 (5th Cir.1990), *cert. denied,* —— U.S. ——, 117 S.Ct. 481, 136 L.Ed.2d 375 (1996) ("While the media generally have a right to publish information that they obtain, '[n]either the First Amendment nor the Fourteenth Amendment mandates a right of access to government information or sources of information within the government's control' ") (quoting *Houchins v. KQED, Inc.,* 438 U.S. 1, 15, 98 S.Ct. 2588, 2597, 57 L.Ed.2d 553 (1978)); *Alexander Grant,* 820 F.2d at 355.

■ Discovery materials therefore are distinguishable from the "judicial records" discussed in the cases cited by the Chronicle,[8] to which the press may more easily gain access. *See, e.g., Grove Fresh,* 24 F.3d at 897–98 (until admitted into the record, materials uncovered during pretrial discovery ordinarily are not within the scope of press access). Although, as the Chronicle points out, the deposition at issue was filed with the Court, it was filed specifically to *prevent* dissemina-

tion, and not for the Court's or others' review of its contents in connection with the merits of this case.[9] "Documents that play no role in the performance of Article III functions, such as those passed between the parties in discovery, lie entirely beyond the presumption's reach," in contrast to a "motion filed by a party seeking action by the court, or indeed, ... any other document which is presented to the court to invoke its powers or affect its decisions." *United States v. Amodeo,* 71 F.3d 1044, 1050 (2d Cir.1995) (internal citations and quotation marks omitted).[10] In the circumstances at bar, the fact that the deposition sought by the Chronicle was filed with the Court does not render it a public document or a proceeding that historically has been open.

Second, public access to the discovery process does not play a significant role in the administration of justice. *See Seattle Times,* 467 U.S. at 36 & n. 23, 104 S.Ct. at 2209 & n. 23. The First Circuit stated as follows:

Indeed, if such access were to be mandated, the civil discovery process might actually be made more complicated and burdensome than it already is ... The public's interest is in seeing that the process works and the parties are able to explore the issues fully without excessive waste or delay. But rather than facilitate an efficient and complete exploration of the facts and issues, a public right of access would unduly complicate the process. It would require the court to make extensive evidentiary findings whenever a request for access was made, and this could in turn lead to lengthy and expensive interlocutory appeals ...

*Anderson,* 805 F.2d at 12.

Therefore, in light of these facts, the Court would hold under *Press–Enterprise* that no

8. *See* Memorandum in Support of Motion to Unseal Deposition [Doc. # 221], at 3–4; Houston Chronicle Publishing Company's Reply Brief [Doc. # 231], at 3–4.

9. The Court's review of certain of these depositions was limited and addressed issues of Claimant's requests for disclosure or expansion of scope of discovery. Most of the depositions have not been reviewed by the Court.

10. The *Amodeo* case concerned a court-appointed officer's sealed investigative report that was "on the periphery of the adjudicative process,"

and was reviewed by the court only in order to ensure that the court officer was "doing what she was appointed to do." *Amodeo,* 71 F.3d at 1051–52. The Sixth Circuit recently held that, since a summary jury trial is essentially a settlement proceeding, which is historically a closed procedure, and does not present any matter for adjudication by the court, the trial court did not err in closing proceeding to the public. *See In re Cincinnati Enquirer,* 94 F.3d 198 (6th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 1107, 137 L.Ed.2d 309 (1997).

First Amendment right of access attaches. *See Press–Enterprise,* 478 U.S. at 9, 106 S.Ct. at 2740–41.[11]

Finally, the Government's interests in safety of confidential informants and in its ongoing criminal investigations outweigh any rights to access that might attach. *See Amodeo,* 71 F.3d at 1050 ("Officials with law enforcement responsibilities may be heavily reliant upon the voluntary cooperation of persons who may want or need confidentiality.... If release is likely to cause persons in the particular or future cases to resist involvement where cooperation is desirable, that effect should be weighed against the presumption of access.") The Government has established that pretrial disclosure of certain non-public information in this case already has negatively influenced potential witnesses, who now feel intimidated from testifying or fear for their personal and their family's safety.

### CONCLUSION

Having reconsidered the order to keep the deposition transcripts under seal now that the trial of this matter has ended, the Court concludes that the protective order entered pursuant to Rule 26(c) should remain in effect as to deponents who did not testify at trial. The Government's recent sealed filings satisfy the Court that its interests in protecting the deponents' identities and statements have not changed significantly from those at the time of the original order. It is therefore

**ORDERED that Houston Chronicle Publishing Company's Motion to Unseal Deposition** of "Marco Enrique Torres Garcia" [Doc. # 220] is **DENIED.** It is further

**ORDERED that Houston Chronicle Publishing Company's Motion to Unseal**

**Deposition** of Mario Ruiz Massieu [Doc. # 217] is **DENIED AS MOOT.**

**11.** In addition to the First Amendment right of access, the Chronicle relies on the common law presumption of access for its claim for access to the confidential informant's deposition. The common law right to inspect and copy public records and documents is subject to the sound discretion of the trial court and considered in light of all relevant facts and circumstances of the particular case. *Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 597–99, 98 S.Ct. 1306, 1311–13, 55 L.Ed.2d 570 (1978); *Belo Broadcasting Corp. v. Clark,* 654 F.2d 423, 434 (5th Cir.1981). However, this right to inspect and copy public documents does not extend to discovery which is not a matter of public record. *Alexander Grant,* 820 F.2d at 355; *Anderson,* 805 F.2d at 13. In addition, the Court notes that the common law presumption of access is "more easily overcome" than the First Amendment right of access. *Anderson,* 805 F.2d at 13 (citing *Nixon,* 435 U.S. at 599, 98 S.Ct. at 1312–13). Therefore, for all of the reasons stated above in the discussion of the Chronicle's First Amendment argument, the Chronicle's argument for access under the common law must fail.